No. 23-11128

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

---

ROWENA K. CROWE and ROBERT H. CROWE,

*Plaintiffs-Appellants,*

v.

JOHNSON & JOHNSON and ETHICON, INC.,

*Defendants-Appellees.*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
Case No. 1:21-cv-210
(Hon. Terry F. Moorer)

---

### BRIEF OF APPELLANTS

---

Frederick B. Darley, III
P. Leigh O'Dell
Beasley, Allen, Crow, Methvin, Portis & Miles, P.C.
Post Office Box 4160
218 Commerce Street (36104)
Montgomery, Alabama 36103-4160
(334) 269-2343
(334) 954-7555 Facsimile

*Attorneys for Plaintiffs-Appellants*

## <u>CERTIFICATE OF INTERESTED PERSONS</u>

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rules 26.1-1 and 26.1-3, the following is an alphabetical list of the trial judges, attorneys, persons, and firms with any known interest in the outcome of this case:

1.    Adams, Kasey M. – Counsel for Defendants/Appellees

2.    Arpert, Hon. Douglas E. – United States Magistrate Judge for the District of New Jersey

3.    Beasley, Allen, Crow, Methvin, Portis & Miles, P.C. – Counsel for Plaintiffs/Appellants

4.    Butler Snow LLP – Counsel for Defendants/Appellees

5.    Byrd, Charles A. – Counsel for Defendants/Appellees

6.    Cassady, Hon. William E. – United States Magistrate Judge for the Southern District of Alabama

7.    Cassisa, Paul V. – Counsel for Defendants/Appellees

8.    Crowe, Robert H. – Plaintiff/Appellant

9.    Crowe, Rowena K. – Plaintiff/Appellant

10.    Birchfield, Jr., Andy D. – Counsel for Plaintiffs/Appellants

11.    Cook, Wesley Chadwick – Counsel for Plaintiffs/Appellants

12.    Darley, III, Frederick Bryan – Counsel for Plaintiffs/Appellants

13.    Ethicon, Inc. – Defendant/Appellee

14.    Goodwin, Hon. Joseph R. – United States District Judge for the Southern District of West Virginia

15.    Johnson & Johnson (NYSE: JNJ) – Defendant/Appellee

16.    Loveman, Margaret H. – Counsel for Defendants/Appellees

17.    Moldoveanu, Susanna M. – Counsel for Defendants/Appellees

18.    Moorer, Hon. Terry F. – United States District Judge for the Southern District of Alabama

19.    O'Dell, Patricia Leigh – Counsel for Plaintiffs/Appellants

20.    Pepke, Amy M. – Counsel for Defendants/Appellees

21.    Shipp, Hon. Michael A. – United States District Judge for the District of New Jersey

22.    Tharp, Andrew D. – Counsel for Defendants/Appellees

23.    Walker, Caroline D. – Counsel for Defendants/Appellees

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Because Plaintiffs/Appellants are individuals, there are no subsidiaries, conglomerates, affiliates, parent corporations or any publicly held corporations that own 10% or more of the stock issued by Plaintiffs/Appellants.

*/s/Frederick B. Darley, III*
Frederick B. Darley, III

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Plaintiffs Rowena K. Crowe and Robert H. Crowe respectfully request oral argument.  This is an appeal from a grant of summary judgment based on the statute of limitations.  Because the determination of when Plaintiffs' claims accrued involves a highly fact-specific inquiry and because the procedural history of this matter is fairly complex, Plaintiffs believe that oral argument will assist the Court.

## **TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PERSONS ........................................................1

CORPORATE DISCLOSURE STATEMENT .......................................................2

STATEMENT REGARDING ORAL ARGUMENT ............................................. i

TABLE OF CONTENTS..................................................................................... ii

TABLE OF AUTHORITIES ...............................................................................v

STATEMENT OF JURISDICTION................................................................... ix

PRELIMINARY STATEMENT .........................................................................1

STATEMENT OF THE ISSUES.........................................................................2

STATEMENT OF THE CASE............................................................................2

   I.   Procedural History and Disposition in the Court Below...............................2

   II.  Statement of Facts ...................................................................................5

      A.  Plaintiffs Rowena and Robert Crowe........................................... 5
      B.  Plaintiff Rowena Crowe ............................................................... 5

STANDARD OF REVIEW ...............................................................................13

SUMMARY OF THE ARGUMENT ..................................................................14

ARGUMENT .....................................................................................................16

   I.   NEW JERSEY'S STATUTE OF LIMITATIONS AND DISCOVERY RULE GOVERN MRS. CROWE'S CLAIMS. ..............................................16

      A. The New Jersey Supreme Court's decision in *McCarrell v. Hoffman-LaRoche, Inc.* controls which state's statute of limitations applies........................16

B.  New Jersey's statute of limitations governs Mrs. Crowe's claims. ............... 17

1.  New Jersey and Alabama's statute of limitations conflict. ...................... 18

2.  New Jersey has expressly adopted Section 142 of the Second Restatement to resolve choice of law determinations involving statutes of limitation. ........................................................................................... 19

3.  Section 142 of the Second Restatement requires application of New Jersey's statute of limitations in this case. .................................................... 19

4.  New Jersey has a substantial interest in allowing Mrs. Crowe's claims to proceed. ........................................................................................... 21

II.  UNDER NEW JERSEY'S STATUTE OF LIMITATIONS, THERE ARE GENUINE  ISSUES OF MATERIAL FACT AS TO WHEN MRS. CROWE'S CLAIMS ACCRUED. ........................................................................... 24

A.  New Jersey's Discovery Rule ........................................................................ 24

B.  Prior to 2015, Mrs. Crowe believed her continued pain was related to a herniated disc because she had been repeatedly told this by her treating doctors. ........................................................................................... 27

C.  Prior to 2015, none of Mrs. Crowe's treating doctors told her that her continued pain was related to Defendants' mesh devices or   even informed her of the possibility. ........................................................................................... 30

D.  Mrs. Crowe first attributed her injuries to Defendants' mesh devices in April 2015 when she saw Dr. Galloway. ........................................................................ 31

E.  Other cases with similar law and fact patterns support a finding that there are genuine issues of material fact as to when Mrs. Crowe's claims accrued. ......... 33

iii

III.  THE DISTRICT COURT IGNORED GENUINE ISSUES OF MATERIAL FACT AND FAILED TO ANALYZE THE FACTS IN A LIGHT MOST FAVORABLE TO MRS. CROWE. ....................................................................38

A.  The district court either ignored or dismissed evidence showing Mrs. Crowe formed a reasonable belief that her pain was caused by a herniated disc from 2010 through 2015 based on the opinions and diagnoses of her doctors. ...........40

B.  The district court either ignored or dismissed testimony from Mrs. Crowe and Dr. Brown relating to whether she asked him if the mesh devices were causing her pain. ...............................................................................................................41

C.  The district court either ignored or dismissed evidence related to    Mrs. Crowe's 2012 surgery when it found as a matter of law that the surgery put her on notice of a basis for an actionable claim. ................................................................43

D.  The district court erred in concluding that the FDA notifications and the fact that others were filing lawsuits were sufficient as a matter of law to put Mrs. Crowe on inquiry notice. ....................................................................................................48

E.  The district court's reliance on *Tily v. Ethicon, Inc.* was misguided. ...........52

CONCLUSION .......................................................................................................53

CERTIFICATE OF COMPLIANCE .......................................................................55

CERTIFICATE OF SERVICE ................................................................................55

# TABLE OF AUTHORITIES

## Cases

*Bellew v. Ethicon, Inc.*,
  2014 WL 6674433 (S.D. W. Va. Nov. 24, 2014) .................................................23

*Blackburn v. Shire US Inc.*,
  18 F.4th 1310 (11th Cir. 2021) ..................................................... 38, 44

*\*Caravaggio v. D'Agostini*,
  765 A.2d 183 (N.J. 2001) ............................................. 25, 26

*Cochran v. GAF Corp.*,
  666 A.2d 245 (Pa. 1995)........................................................53

*Curtis v. Mentor Worldwide, LLC.*,
  543 Fed. Appx. 901 (11th Cir. 2013).............................................. 34, 35

*Diaz v. C.R. Bard, Inc.*,
  2023 WL 3452667 (D.N.J. May 15, 2023).........................................25

*Doe v. Chiquita Brands Int'l, Inc.*,
  2020 WL 7388944 (S.D. Fla. Sept. 30, 2020) ......................................21

*\*Egnayem v. Boston Sci. Corp.*,
  873 F.3d 1304 (11th Cir. 2017) ..................................................... 34, 50

*Ferens v. John Deere Co.*,
  494 U.S. 516 (1990)........................................................17

*Foreman v. Boston Scientific Corp.*,
  2015 WL 1276714 (S.D.W.Va. March 19, 2015) .................................47

*Gantes v. Kason Corp.*,
  679 A.2d 106 (N.J. 1996) ..................................................... 17, 22

*Gleason v. Borough of Moosic*,
  15 A.3d 479 (Pa. 2011)........................................................52

*Goodman v. Mead Johnson & Co.*,
  534 F.2d 566 (3d Cir. 1976) ..................................................... 27, 32

*Hermitage Corp. v. Contractors Adjustment Co.*,
    651 N.E.2d 1132 (Ill. 1995)......................................................................35

*Hurly v. Pfizer Inc.*,
    2012 WL 1161619 (D.N.J. Apr. 9, 2012).................................................27

*Huskey v. Ethicon, Inc.*,
    29 F.Supp.3d 736 (S.D. W. Va. 2014).....................................................23

*In re Ethicon, Inc., Pelvic Repair System Products Liability Litigation*,
    2014 WL 186869 (S.D. W. Va. Jan. 15, 2014) .......................................23

*In re Mentor Corp. Obtape Transobturator Sling Prod. Liab. Litig.*,
    748 F. Appx. 212 (11th Cir. 2018) ............................................... 34, 46

*James Ventures, L.P. ex rel. Alpert v. Timco Aviation Services, Inc.*,
    315 Fed. Appx. 885 (11th Cir. 2009)........................................................20

*Kendall v. Hoffman-La Roche, Inc.*,
    36 A.3d 541 (N.J. 2012) ........................................................... 24, 25, 26

*Klempka v. G.D. Searle & Co.*,
    963 F.2d 168 (8th Cir. 1992) ..................................................... 33, 34

*Lopez v. Swyer*,
    300 A.2d 563 (N.J. 2007) ..................................................... 18, 24, 27

*Martinez v. Cooper Hosp.-Univ. Med. Ctr.*,
    747 A.2d 266 (N.J. 2000) .........................................................................24

*Mason v. Ethicon, Inc.*,
    2020 WL 6270847 (M.D. Fla. Sept. 9, 2020)...........................................46

*McCaleb v. A.O. Smith Corp.*,
    200 F.3d 747 (11th Cir. 2000) ................................................................13

*\*McCarrell v. Hoffman-LaRoche, Inc.*,
    153 A.3d 207 (N.J. 2017) ............................................................... passim

*Pillsbury Co., Inc. v. West Carrollton Parchment Co., Inc.*,
    287 Fed. Appx. 824 (11th Cir. 2008)........................................................13

vi

*Pozzi Window Co. v. Auto-Owners Ins.*,
  446 F.3d 1178 (11th Cir. 2006) ............................................................13

*Rogers v. Mentor Corp.*,
  682 Fed. Appx. 701 (11th Cir. 2017)...................................................33

*Rowe v. Hoffmann–La Roche, Inc.*,
  917 A.2d 767 (N.J. 2007) ....................................................................17

*Rowland v. Novartis Pharms. Corp.*,
  34 F. Supp. 3d 556 (E.D. Pa. 2014) ....................................................52

*Sanchez v. Boston Scientific Corp.*,
  2014 WL 202787 (S.D.W.Va. Jan. 17, 2014) ......................................47

*Savage v. Old Bridge-Sayreville Medical Group, P.A.*,
  633 A.2d 514 (N.J. 1993) ....................................................................24

*Stark v. Johnson & Johnson*,
  10 F.4th 823 (7th Cir. 2021) ........................................... 35, 36, 37, 48

*Straub v. Boston Scientific Corp.*,
  2015 WL 1198545 (S.D.W.Va. March 16, 2015) ................................47

*Szczuvelek v. Harborside Healthcare Woods Edge*,
  865 A.2d 636 (N.J. 2005) ....................................................................24

*Tily v. Ethicon, Inc.*,
  2020 WL 5369724 (E.D. Pa. Sept. 8, 2020) .................................. 52, 53

*Van Dusen v. Barrack*,
  376 U.S. 612 (1964).......................................................................20, 21

*Vispisiano v. Ashland Chem. Co.*,
  527 A.2d 66 (N.J. 1987) ......................................................................25

*Wilson v. El-Daief*,
  964 A.2d 354 (Pa. 2009)......................................................................53

*Yarchak v. Trek Bicycle Corp.*,
  208 F.Supp.2d 470 (D.N.J. 2002) .................................................25, 27

## Statutes

28 U.S.C. §1291 ................................................................. xi

28 U.S.C. § 1332 ............................................................. x, xi

28 U.S.C. § 1404(a) ..................................................... passim

Ala. Code § 6-2-38(l) ..........................................................18

Fla. Stat. § 95.031(2) ..........................................................34

N.J.S.A. 2A:14-2 .................................................................18

## Rules

Eleventh Circuit Rules 26.1-1 and 26.1-3..................................1

Fed. R. App. P. 32(a)(5) .....................................................55

Fed. R. App. P. 32(a)(6) .....................................................55

Fed. R. App. P. 32(f) ..........................................................55

Fed. R. Civ. P. 59(e) .............................................................5

Federal Rule of Appellate Procedure 26.1 ................................1

Rule 27(d)(2)(A), Federal Rules of Appellate Procedure........................55

## Other Authorities

*Restatement (Second) of Conflicts of Law* § 142 (1971) ............................ 19, 20, 21

## STATEMENT OF JURISDICTION

Plaintiffs filed suit against the Defendants on August 20, 2015, in the United States District Court for the District of New Jersey.  V1-Doc.1.[1]  The district court in New Jersey had subject-matter jurisdiction over this action by virtue of 28 U.S.C. § 1332, in that the amount of controversy exceeds seventy-five thousand dollars ($75,000) exclusive of interest and costs and because there is complete diversity of citizenship between the parties.  *Id.* at ¶ 5.  Plaintiffs are residents and citizens of Alabama.  *Id.* at ¶ 1.  Defendants are New Jersey corporations with their principal places of business in New Jersey.  V1-Doc.10-2 at ¶ 4; V1-Doc.10-3 at ¶ 3.  The district court in New Jersey determined that it had personal jurisdiction over this matter and Defendants did not dispute this.  V2-Doc. 39 at 6.

The Judicial Panel on Multidistrict Litigation subsequently transferred Plaintiffs' case from the District of New Jersey to MDL No. 2327[2] ("MDL Court") in the United States District Court for the Southern District of West Virginia.  After

---

[1] For ease of reference, each citation to the Appendix contains the volume number followed by the document number.  For example, the Complaint (Doc. 1), which is located in Appendix Volume 1 will be cited as "V1-Doc.1."  Citations to deposition transcripts include page and line numbers assigned by the court reporter.  For other filings (orders, motions, accompanying exhibits, etc.), referenced page numbers will be those that appear in the header assigned generated by the district court's electronic filing system.

[2] *In re: Ethicon, Inc.*, Pelvic Repair Sys. Prods. Liab. Litig., No. 2:12-md-2327 (S.D. W. Va.).

pre-trial proceedings in the MDL Court, the case was remanded back to the district court in New Jersey.  Thereafter, it was transferred to the United States District Court for the Southern District of Alabama on Defendants' motion pursuant to 28 U.S.C. § 1404(a).  V2-Doc.39; V2-Doc.40.

The district court in Alabama determined that it had original jurisdiction over this matter pursuant to 28 U.S.C. § 1332 (diversity) and this has not been challenged by either party.  V5-Doc.99 at 1-2.

Plaintiffs appeal the district court's grant of summary judgment.  This Court has jurisdiction to consider this appeal pursuant to 28 U.S.C. §1291.

## PRELIMINARY STATEMENT

The district court erred in applying New Jersey's discovery rule. The district court improperly interpreted the facts, ignored genuine issues of material fact, and mistakenly determined that Plaintiffs' claims were time-barred as a matter of law. Until 2015 when she was examined by Dr. Niall Galloway, Chief of Female Urology at Emory University, Mrs. Crowe did not have reason to suspect her injuries could be related to Defendants' mesh devices. None of her treating doctors had told her that the mesh devices could be the source of her pain, but rather, explained that they believed her pain was related to a herniated disc, for which she subsequently received both surgical and non-surgical treatment. Mrs. Crowe relied on and trusted her doctors. Based on the evidence before the district court, a reasonable juror could conclude that the statute of limitations began running when Dr. Galloway informed her that her injuries may be mesh-related in 2015.

The district court applied its own judgment and interpretation to disputed material facts to find as a matter of law, that Mrs. Crowe should have been aware in 2011 or 2012 that she may have a basis for an actionable claim. The decision's effect is to require that in the absence of any indication from her doctors or otherwise that the mesh products were defective and caused her injuries, Mrs. Crowe should have proceeded in filing a lawsuit. The district court's ruling does not comply with New Jersey law. The district court improperly invaded the province of the jury and erred

by granting summary judgment.  The decision of the district court should be reversed, and the case should proceed to trial.

## STATEMENT OF THE ISSUES

I.      Whether the District Court erred in granting summary judgment, deciding as a matter of law that Plaintiffs should have discovered they may have had a basis for an actionable claim in 2011 or 2012, when none of Mrs. Crowe's treating doctors prior to that time told her that the mesh devices were defective or responsible for her continued pain and, in fact, told her that her pain was related to a herniated disc.

II.     Whether a jury could find that it was reasonable for Mrs. Crowe not to investigate whether she may have a potential claim against Defendants in 2011 or 2012 when none of her treating doctors had told her that the mesh devices were defective or responsible  for her continued pain and, in fact, told her that her pain was related to a herniated disc.

## STATEMENT OF THE CASE

**I.      Procedural History and Disposition in the Court Below**

This is an appeal from a grant of summary judgment based on the statute of limitations in a pelvic mesh product liability case.

Rowena K. Crowe and her husband, Robert H. Crowe, filed suit against Defendants on August 20, 2015 in the United States District Court for the District of New Jersey.  V1-Doc.1.  Plaintiffs' operative claims were for negligence, strict

liability failure to warn, strict liability defective design, fraud, gross negligence, negligent misrepresentation, and loss of consortium.[3]

Plaintiffs sought damages for injuries Mrs. Crowe sustained and continues to experience following implantation of two of Defendants' mesh devices. Mrs. Crowe's husband, Robert K. Crowe, has experienced a loss of consortium.

Plaintiffs' case was subsequently transferred to the MDL Court in the Southern District of West Virginia. V1-Doc.4. On October 31, 2018, Plaintiffs' case was designated for case-specific discovery workup. V2-Doc.10-8. Depositions of Plaintiffs, several of Mrs. Crowe's treating doctors, and both parties' case-specific experts were completed. Pursuant to the scheduling deadlines set forth in PTO 320, the parties were ordered to file dispositive motions by May 13, 2019. *Id.* at 3.

Defendants filed their original motion for summary judgment (V2-Doc.62) and several *Daubert* motions by the May 13, 2019 deadline and Plaintiffs timely filed their responses in opposition. V2-Doc.71. Defendants did not argue that the statute of limitations barred Plaintiffs' claims in their original motion for summary judgment.

---

[3] In response to Defendants' original Motion for Summary Judgment, Plaintiffs withdrew the following claims: Count II (Strict Liability – Manufacturing Defect); Count X (Negligent Infliction of Emotional Distress); Count XI (Breach of Express Warranty); Count XII (Breach of Implied Warranty); Count XIII (Consumer Fraud); and Count XV (Unjust Enrichment). V2-Doc.71 at 5, 20.

3

Without ruling on the parties' motions, the MDL Court deemed the case ready for trial and remanded it back to the district court in New Jersey. V2-Doc.10-9. Upon transfer, the MDL Court stated discovery was "complete," noted the parties "have had time to file dispositive and *Daubert* motions, responses and replies," and "*urge[d] the receiving court to immediately set the[] case[] for trial*." *Id.* at 1-2 (emphasis in original).

Following remand, Defendants filed a Motion to Transfer Venue from the the district court in New Jersey to the United States District Court for the Southern District of Alabama. Despite being headquartered in New Jersey and maintaining their principal places of business in New Jersey, Defendants argued that the district court in Alabama would be a more convenient forum. Over Plaintiffs' opposition, the district court in New Jersey transferred Plaintiffs' case to the Southern District of Alabama pursuant to 28 U.S.C. § 1404(a). V2-Doc.39; V2-Doc.40.

After this matter was transferred to the district court in Alabama, Defendants requested leave of court to file a second motion for summary judgment, asserting for the first time that Plaintiffs' claims were time-barred by the statute of limitations. V2-Doc.76. Plaintiffs opposed this motion as not being timely filed since the MDL Court's deadline for filing dispositive motions had passed and there were no changed circumstances. The court allowed Defendants to file a second motion for summary judgment. V2-Doc. 89. Defendants did not present good reason for failing to raise

4

the statute of limitations defense in their original motion for summary judgment. In fact, counsel for Defendants admitted that the decision not to raise it at that time was "strategic." V5-Doc.117 at 3.

On June 15, 2022, the Southern District of Alabama granted Defendants' Motion for Summary Judgment on the Statute of Limitations. V5-Doc.99. That same day, the court entered a final judgment. V5-Doc.100.

Plaintiffs timely filed a Motion to Alter or Amend Judgment pursuant to Fed. R. Civ. P. 59(e) on July 11, 2022. V5-Doc.102. On March 10, 2023, the district court denied Plaintiffs' Motion to Alter or Amend Judgment. V5-Doc.109. Plaintiffs timely filed their Notice of Appeal with the district court on April 5, 2023. V5-Doc.110.

## II.    Statement of Facts

### A.    Plaintiffs Rowena and Robert Crowe

Rowena and Robert Crowe have been married for forty-four (44) years. The Crowe's currently live in Seale, Alabama (Russell County) where they have lived since 2013. Prior to moving to Seale, the Crowe's lived in Fairhope, Alabama.

### B.    Plaintiff Rowena Crowe

On May 24, 2007, Mrs. Crowe presented to Brown & McCool OB/GYN as a new patient. V2-Doc. 91-1. She reported complaints of urinary incontinence and pelvic pressure. *Id.* After an examination, Dr. Robert Brown noted she had a

prolapsed bladder and plans were subsequently made for Mrs. Crowe to undergo surgery.  *Id.*

On July 17, 2007, Mrs. Crowe underwent surgery in which two of Defendants' mesh devices were implanted.  V2-Doc.91-4.  Dr. Brown's colleague, Dr. Angela McCool, implanted the Prolift mesh device to repair Mrs. Crowe's prolapsed bladder and the TVT-O mesh device to treat her stress urinary incontinence.  *Id.*  In 2010, Mrs. Crowe began to experience the pelvic pain that she still experiences to this day. V4-Doc.92-8 at 23:7-13, 28:2-10.

On August 5, 2010, Mrs. Crowe saw Dr. Brown and reported experiencing she had been experiencing pain in her left groin for a few months.  V2-Doc.91-12. After Dr. Brown performed a pelvic exam, he informed Mrs. Crowe that Dr. McCool had done a good job on the 2007 implant surgery.  V4-Doc.92-8 at 75:9-22, 156:24-157:9.  Dr. Brown also informed Mrs. Crowe that he thought she had a herniated disc and suggested an MRI of her spine.  *Id.* at 75:23-76:6, 79:1-14, 158:11-19, 159:1-7; V3-Doc.92-2 at 55:7-10.  Mrs. Crowe underwent an MRI that same day which showed she had a herniated disc and Dr. Brown referred her to Dr. James West, an orthopedic surgeon.  V4-Doc. 92-8 at 79:10-14, 158:20-159:3; V3-Doc.92-2 at 55:18-57:21.

Mrs. Crowe followed Dr. Brown's recommendation and visited Dr. West several weeks later.  V4-Doc.92-9.  At this time, Dr. West told Mrs. Crowe that x-

rays confirmed she had a herniated disc.  *Id.*  Dr. West recommended that Mrs. Crowe undergo physical therapy and epidurals and also prescribed pain medication. *Id.*  After the physical therapy, epidurals, and medication did not relieve her pain, Mrs. Crowe underwent microdiscectomy surgery in September 2010 on the advice of Dr. West.  V4-Doc.92-10; V4-Doc.92-11.

Mrs. Crowe continued to experience pelvic pain and returned to see Dr. McCool on January 12, 2011.  V4-Doc.92-8 at 160:17-22.  Dr. McCool told Mrs. Crowe that she thought she was depressed and that sometimes pain can be a symptom of depression.  Dr. McCool informed Mrs. Crowe that her vaginal exam was normal and prescribed her Cymbalta, an antidepressant.  V4-Doc.92-8 at 160:17-161:8; V3-Doc.92-1 at 55:2-56:1, 56:13-57:8, 57:22-58:5, 119:20-120:2.

Mrs. Crowe was seen by Dr. Brown on November 9, 2011 and complained of continued pelvic and groin pain.  V3-Doc.91-18.  Dr. Brown noted she had been seeing a chiropractor for pain management.  Dr. Brown also conducted a pelvic examination.  *Id.*  Dr. Brown did not document any abnormalities on examination and concluded that Mrs. Crowe's pain continued to be related to a herniated disc. *Id.*; V3-Doc.92-2 at 65:19-66:9.  Dr. Brown testified that nothing in the physical examination led him to believe Mrs. Crowe's pain was related to the mesh devices and if it had, he would have informed Mrs. Crowe of this at that time.  V3-Doc.92-2 at 67:5-18.

In March 2012, Mrs. Crowe underwent another microdiscectomy surgery by Dr. West.  V3-Doc.92-2 at 69:7-70:7.  Her pain persisted and she saw Dr. Brown again on May 24, 2012.  After an examination, Dr. Brown testified that he did not note anything that caused him to believe Mrs. Crowe's pain was related to the mesh devices but did note that she had recently undergone repair of a herniated disc on her left side where she was experiencing pain.  V3-Doc.92-2 at 67:19-70:18.

Mrs. Crowe returned to Dr. Brown on June 29, 2012 and reported she was still having pain in her abdominal area.  V4-Doc.92-12.  On examination, Dr. Brown documented "pain on sacrum around sacral nerves no vaginal pain on mesh etc. can't even feel mesh."  *Id.*  Dr. Brown's assessment noted herniated disc and irritable bowel syndrome as likely causes of her pain.  *Id.*  Dr. Brown also noted that Mrs. Crowe should consider returning to Dr. West (orthopedic) or Dr. Leslie Rush (physical medicine and rehab specialist) to evaluate her sacral nerves and numbness. *Id.*

At this visit on June 29, 2012, Mrs. Crowe also reported that she had recently experienced vaginal bleeding for approximately eleven days.  V4-Doc.92-12.  Dr. Brown noted in his records that Mrs. Crowe's bleeding stopped after she stopped taking the hormone therapy medication she had been prescribed, but recommended

that she undergo a hysterosonogram.[4]  *Id.*; V3-Doc.91-20.  After the hysterosonogram, Dr. Brown informed Mrs. Crowe that she had pelvic inflammatory disease and pelvic congestion and recommended she undergo a hysterectomy.  V4-Doc.92-8 at 93:13-94:8; V3-Doc.92-2 at 73:8-13.  Dr. Brown testified that he thought a hysterectomy would treat Mrs. Crowe's pelvic congestion which could help relieve her pain.  V3-Doc.92-2 at 73:8-13.  Dr. Brown described pelvic congestion as being "like a hemorrhoid [of]…the varicose veins on your leg" which can cause pain of the ovarian vein.  *Id.* at 73:1-7.

On October 8, 2012, Mrs. Crowe underwent surgery performed by Dr. Brown.  V4-Doc.92-14.  Dr. Brown performed a hysterectomy, a bilateral salpingo-oophorectomy[5], and also cut one of the arms of the Prolift mesh that had become tighter over time to relieve tension.  *Id.*; V3-Doc.92-2 at 76:6-10.  Despite cutting one of the arms of the Prolift mesh, Dr. Brown testified that he did not believe the mesh was the cause of Mrs. Crowe's pain.  V3-Doc.92-2 at 175:13-21.  Dr. Brown still believed her pain was related to a herniated disc and possibly irritable bowel syndrome.  *Id.*

---

[4] A hysterosonogram is an ultrasound exam that provides images of the uterus to diagnose the cause of vaginal bleeding.

[5] A bilateral salpingo-oophorectomy is a surgery to remove the fallopian tubes and ovaries.

According to Dr. Brown, when mesh becomes tight in a certain area, that does not necessarily indicate there's a problem with the actual mesh itself and does not indicate that the mesh became tight because of anything directly related to the mesh itself.  V3-Doc.92-2 at 54:6-55:6.  Dr. Brown also testified there can be a number of factors that can influence whether or not mesh becomes tighter, including if a patient has vaginal atrophy, and that some contracture of the mesh over time is expected. *Id.*

Mrs. Crowe and her husband moved to Seale, Alabama in 2013.  V4-Doc.92-8 at 7:6-10.  When she continued to experience pelvic pain, she sought treatment at nearby Hughston Clinic for what she continued to believe was an orthopedic issue. She saw Dr. Douglas Pahl in February 2014 and reported "predominant left leg pain and back pain which [had] been ongoing for about four years.  V4-Doc.92-16.  She described[ed] the left leg pain as radiating." *Id.*  After reviewing x-rays with Mrs. Crowe, Dr. Pahl recommended a selective nerve root block and if that did not work that she consider undergoing lumbar fusion surgery. *Id.*  Mrs. Crowe continued to experience pain and, in July 2014, made the decision to go forward with the spinal fusion surgery after discussion with Dr. Fredy Martinez at the Hughston Clinic.  V4-Doc.92-17.  Mrs. Crowe underwent lumbar fusion surgery performed by Dr. Pahl on August 29, 2014.  V4-Doc.92-17.

10

Mrs. Crowe continued to experience pain following her August 2014 surgery and returned to the Hughston Clinic on February 24, 2015. V4-Doc.92-19. She reported that she was still having the same pain she was having preoperatively "which is predominant left sided pelvic 'pressure' extending from the groin area to the greater sciatic notch region[]." *Id.* She underwent an MRI of her lumbar spine and returned to discuss the results with Dr. Martinez on March 17, 2015. V4-Doc.92-20. At this time, Dr. Martinez informed her that she probably had an issue that was related to her pelvis and no longer related to her lumbar spine. *Id.* She was then referred to Dr. Niall Galloway, a Urogynecologist and Chief of Female Urology at the Emory Clinic (Emory University) in Atlanta.

Mrs. Crowe first visited Dr. Galloway on April 16, 2015. V4-Doc.92-21. At this time, Mrs. Crowe reported "pelvic pain which [was] persistently worsening." *Id.* Plans were made for Mrs. Crowe to return for a cystoscopy and a more extensive pelvic examination to evaluate for any anatomic causes of her urinary incontinence as well as for any evidence of eroded mesh. *Id.*

Mrs. Crowe returned to the Emory Clinic on April 21, 2015. V4-Doc.92-22. Mrs. Crowe underwent an extensive pelvic examination overseen by Dr. Galloway which revealed "significant point tenderness along several portions of her mesh." *Id.* After the examination, Dr. Galloway met with both Mr. and Mrs. Crowe in his office to explain his findings and provided them with a copy of his notes. V3-Doc.

11

92-7 at 61:23-63:12.    Mr. Crowe testified that Dr. Galloway's notes were "transcendental" and that he and Mrs. Crowe understood at that point "that there was a very strong connection between...the mesh...and other issues that [Mrs. Crowe] had been experiencing." *Id.*

On June 1, 2015, Mrs. Crowe underwent surgery at Emory University Hospital performed by Dr. Galloway in conjunction with Dr. Samuel David. V4-Doc.92-23. During this surgery, the TVT-O was found to be causing tension under Mrs. Crowe's urethra and Dr. Galloway dissected it to try and release the tension. *Id.* Dr. Galloway also noted that the distal edge of the Prolift mesh had rolled back, created a ridge, and was starting to erode into Mrs. Crowe's bladder. *Id.* Therefore, Dr. Galloway removed a large portion of the Prolift during this surgery as well. *Id.*

Having been informed for the first time by Dr. Galloway that Mrs. Crowe's symptoms may have been related to mesh, the Crowe's engaged counsel. V4-Doc.92-8 at 91:9-92:1; V3-Doc.92-7 at 20:23-21:19. Counsel filed a lawsuit on their behalf on August 20, 2015. V1-Doc.1.

Between 2010, when Mrs. Crowe's pain began, and 2014, she visited gynecologists, orthopedics, physical therapists, and a rheumatologist in an effort to address her pain. V3-Doc.92-2 at 164:19-166:1, 167:3-168:1. Dr. Brown testified that he and Dr. McCool "were sending [Mrs. Crowe] to different physicians to figure out what the issue was." *Id.* During the dozens of visits and consultations between

12

2010 and 2014, Mrs. Crowe was never informed that her pain was related to Defendants' mesh devices.  V4-Doc.92-8 at 25:24-26:5, 164:21-165:2, 165:19-24; V2-Doc.91-6 at 7; V3-Doc.92-2 at 169:8-18, 170:10-20; V3-Doc.92-1 at 158:16-159:2.  Mrs. Crowe was never informed of even the possibility that her pain was related to the mesh devices prior to 2015.  V4-Doc.92-8 at 25:24-26:5, 165:3-8, 166:1-6.

## <u>STANDARD OF REVIEW</u>

The standard of review in this appeal is *de novo* because this is an appeal from a summary judgment and because this appeal involves the review of a district court's application of a statute of limitations.  *McCaleb v. A.O. Smith Corp.*, 200 F.3d 747, 750 (11th Cir. 2000).  "A district court may not grant a motion for a judgment as a matter of law unless 'the evidence is such that, without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, there can be but one conclusion as to the verdict that reasonable [persons] could have reached.'" *Pillsbury Co., Inc. v. West Carrollton Parchment Co., Inc.*, 287 Fed. Appx. 824, 826-827 (11th Cir. 2008) (quoting *Pozzi Window Co. v. Auto-Owners Ins.,* 446 F.3d 1178, 1189 n.4 (11th Cir. 2006)).

## SUMMARY OF THE ARGUMENT

Under New Jersey's statute of limitations, there are genuine issues of material fact as to when Plaintiffs' claims accrued. In finding that Plaintiffs' claims were time-barred as a matter of law, the court ignored genuine issues of material fact and failed to analyze the facts in a light most favorable to Plaintiffs.

Because Plaintiffs originally filed this case in the United States District Court for the District of New Jersey, New Jersey's choice of law rules dictate that New Jersey's two-year statute of limitations and discovery rule govern. Plaintiffs have presented substantial evidence showing there are genuine issues of material fact as to when Mrs. Crowe's claims accrued.

In 2007, Mrs. Crowe had surgery where two of Defendants' mesh devices were implanted in her. In 2010, Mrs. Crowe began to experience the pelvic and groin pain that she still experiences to this day. Mrs. Crowe did not attribute her pain to Defendants' mesh devices until 2015 when Dr. Niall Galloway, a Urogynecologist at Emory University, began treating her.

Prior to 2015, Mrs. Crowe believed her pain was related to a herniated disc because she was repeatedly told so by her treating doctors. Mrs. Crowe diligently sought treatment for her pain and followed the treatment recommendations of her doctors. She received epidurals, went to physical therapy, and underwent multiple serious back surgeries. She trusted her doctors and her belief that her pain was

14

related to a herniated disc was based on information she received from her treating doctors and was more than reasonable.

Until 2015, none of Mrs. Crowe's treating doctors informed her that Defendants' mesh devices were the cause of her pain or even possibly the cause of her pain. She should not be expected to investigate a potential claim related to Defendants' mesh devices when none of her treating doctors gave her reason to inquire further. To require her to do so would essentially force her to doubt and distrust her doctors. Any question as to whether it was reasonable for Mrs. Crowe to inquire further when she did or whether she should have inquired earlier is a question of fact for a jury and was not for the district court to determine at the summary judgment stage.

The district court held that by 2012, at the latest, Mrs. Crowe should have discovered she may have a basis for an actionable claim. The court stated that using minimal diligence Mrs. Crowe would have discovered a 2008 FDA Public Health Notification (informing healthcare professionals **not** patients of possible complications) and "that by 2012, thousands of plaintiffs were filing lawsuits against pelvic mesh manufacturers (including the Defendants)." V5-Doc.99 at 17-18.

In making this determination, the court improperly concluded as a matter of law that Mrs. Crowe had reason in 2011 or 2012 to inquire further as to whether Defendants' mesh devices could be to blame. The court ignored or dismissed

evidence showing she had a reasonable belief about the cause of her pain – her herniated disc – beginning in 2010 through 2015. Additionally, the court improperly weighed the evidence relating to Mrs. Crowe's care and treatment between 2010 and 2012 and either ignored or dismissed testimony from Mrs. Crowe and her doctors. The deposition testimony of Mrs. Crowe and Dr. Robert Brown demonstrates genuine issues of material fact as to whether Mrs. Crowe or a reasonable person should have been on notice of a potential claim related to Defendants' mesh devices. Those issues should be decided by a jury and this Court should reverse the district court's grant of summary judgment.

## ARGUMENT

## I.    NEW JERSEY'S STATUTE OF LIMITATIONS AND DISCOVERY RULE GOVERN MRS. CROWE'S CLAIMS.

Both parties agree that Alabama's substantive law governs the underlying causes of action in this case. However, the parties do not agree on which statute of limitations governs. Because Plaintiffs originally filed this case in the United States District Court for the District of New Jersey, New Jersey's choice of law rules dictate that New Jersey's statute of limitations governs. Defendants argue that Alabama's statute of limitations applies.

### A.    The New Jersey Supreme Court's decision in *McCarrell v. Hoffman-LaRoche, Inc.* controls which state's statute of limitations applies.

16

It is well-established that when a court transfers a case under 28 U.S.C. § 1404(a), the transferee court must apply the choice of law rules of the state from which the case was transferred. *See, e.g., Ferens v. John Deere Co.,* 494 U.S. 516, 523 (1990) (a § 1404(a) transfer does not change the state law applicable to a diversity case, it is simply a "change of courtrooms"). Because Plaintiffs originally filed suit in New Jersey and the district court transferred this matter to the Southern District of Alabama pursuant to 28 U.S.C. § 1404(a), the Alabama district court correctly found that New Jersey's choice of law rules and the analysis set forth by the New Jersey Supreme court in *McCarrell v. Hoffman-LaRoche, Inc.* should be used to determine which state's statute of limitations to apply. V5-Doc.99 at 12-14; *see McCarrell v. Hoffman-LaRoche, Inc.*, 153 A.3d 207 (N.J. 2017).

**B.     New Jersey's statute of limitations governs Mrs. Crowe's claims.**

In any choice-of-law analysis, the first inquiry is whether the laws of the states with interests in the litigation are in conflict. *McCarrell*, 153 A.3d at 216 (citing *Gantes v. Kason Corp.*, 679 A.2d 106, 109 (N.J. 1996). When application of the forum state's or another state's statute of limitations results in the same outcome, no conflict exists, and the law of the forum state governs. *McCarrell*, 153 A.3d at 216 (citing *Rowe v. Hoffmann–La Roche, Inc.*, 917 A.2d 767 (N.J. 2007). In contrast, a true conflict exists when one state's statute of limitations would bar an action while the other state's statute of limitations would result in a court finding that the

17

complaint was timely.  *McCarrell*, 153 A.3d at 216.  In that circumstance, a court must decide, under the appropriate choice-of-law rule, which jurisdiction's statute governs.  *Id.*

### 1.    New Jersey and Alabama's statute of limitations conflict.

In this case, New Jersey and Alabama's statutes of limitations are in conflict. *See McCarrell*, 153 A.3d at 216.  Alabama has a two-year statute of limitations for personal injury claims, and Alabama law does not recognize a "discovery rule" or equitable tolling for personal injury claims.  *See* Ala. Code § 6-2-38(l); *see also McCarrell*, 153 A.3d at 212-13.  While New Jersey also has a two-year statute of limitations for personal injury claims, New Jersey recognizes a "discovery rule." *See* N.J.S.A. 2A:14-2.   Under New Jersey's "discovery rule," the statute of limitations does not begin to run "until the injured party discovers, or by an exercise of reasonable diligence and intelligence should have discovered that he may have a basis for an actionable claim."  *McCarrell*, 153 A.3d at 212 (citing *Lopez v. Swyer*, 300 A.2d 563 (N.J. 2007).  Therefore, a conflict exists that requires a choice of law analysis to determine whether New Jersey's or Alabama's statute of limitations should be applied.

Plaintiffs have conceded that under Alabama's statute of limitations, Mrs. Crowe's claims would have accrued in 2010 when she began to experience pelvic pain and therefore, Plaintiffs' complaint would not be considered timely when filed

in 2015. V3-Doc. 92 at 23. As explained further below, under New Jersey's statute of limitations, Mrs. Crowe's claims are timely because she filed suit well within two years of discovering that Defendants' conduct may have caused her injuries.

The district court erred when it found that there was no conflict between New Jersey and Alabama's statute of limitations because Mrs. Crowe's claims were time-barred under both. V5-Doc.99 at 17.

> **2.    New Jersey has expressly adopted Section 142 of the Second Restatement to resolve choice of law determinations involving statutes of limitation.**

In January 2017, the New Jersey Supreme Court issued a significant decision specifically related to the choice of law framework to resolve conflicts between statutes of limitation. In *McCarrell v. Hoffman-LaRoche, Inc.*, the New Jersey Supreme Court expressly adopted section 142 of the Restatement (Second) of Conflict of Laws ("Second Restatement") to resolve choice of law determinations involving statutes of limitation. *McCarrell*, 153 A.3d at 210; *see Restatement (Second) of Conflicts of Law* § 142 (1971) (*Am. Law Inst.*, amended 1988). Previously, New Jersey courts followed either the governmental-interest test or the significant-relationship test to determine which state's statute of limitations to apply.

> **3.    Section 142 of the Second Restatement requires application of New Jersey's statute of limitations in this case.**

Under section 142(2)(a) of the Second Restatement, the statute of limitations of the forum state generally applies whenever that state has a substantial interest in

19

the maintenance of the claim.  *McCarrell*, 153 A.3d at 221.  In that circumstance, the inquiry ends, unless exceptional circumstances would render that result unreasonable.  *Id.*  Only when the forum state has "no substantial interest" in the maintenance of the claim does a court consider section 142(2)(b)—whether "the claim would be barred under the statute of limitations of a state having a more significant relationship to the parties and the occurrence."  *Id.* (citing *Restatement (Second)*, *supra*, § 142(2)(a)-(b)).

As discussed in Section I, *supra*, since Plaintiffs' case was transferred from the district court in New Jersey to the Southern District of Alabama under § 1404(a), this Court should treat New Jersey as the forum state for purposes of this analysis. *See James Ventures, L.P. ex rel. Alpert v. Timco Aviation Services, Inc.*, 315 Fed. Appx. 885, 888 (11th Cir. 2009) (It is well established that a transfer under § 1404(a) is generally "but a change of courtrooms.").  This Court is "obligated to apply the state law that would have been applied if there had been no change of venue."  *See Van Dusen v. Barrack*, 376 U.S. 612, 641 (1964).  Therefore, New Jersey should be considered the forum state for purposes of deciding whether Section 142 of the Second Restatement requires application of New Jersey's statute of limitations in this case.

The forum state is the state in which the case was filed.  In this instance, the Crowe's case was filed in the District of New Jersey, making New Jersey the forum

state.  The district court erred when it considered Alabama to be the forum state. V5-Doc.99 at 17.  Because New Jersey is the forum state, the district court was required to apply the choice of law rules as if it were the New Jersey district court and the case had remained there.  *See Doe v. Chiquita Brands Int'l, Inc.*, 2020 WL 7388944, *6 (S.D. Fla. Sept. 30, 2020) (as the transferee court, this court must apply the choice-of-law rules of New Jersey, the state where the transferor court sits, in determining whether New Jersey would apply its own statute of limitations or the statute of some other state or forum).

New Jersey must be considered to be the forum state for purposes of deciding whether Section 142 of the Second Restatement requires application of New Jersey's statute of limitations in this case.  Defendants should not be able to use § 1404(a) to deprive Plaintiffs of any privileges or state law advantages associated with their choice to file suit in a proper forum, the New Jersey district court.  *See Van Dusen,* 376 U.S. at 636-37.

### 4.    New Jersey has a substantial interest in allowing Mrs. Crowe's claims to proceed.

For all practical purposes, under section 142, once this Court finds that New Jersey has a substantial interest in the litigation, the inquiry is at an end and New Jersey's statute of limitations should be applied.  *See McCarrell*, 153 A.3d at 223-24.  Because New Jersey has a substantial interest in allowing Plaintiffs' case to

proceed, no further inquiry is necessary and New Jersey's statute of limitations should be applied.

New Jersey courts have long recognized that New Jersey has a substantial interest in deterring its manufacturers from placing dangerous products in the stream of commerce. *See McCarrell*, 153 A.3d at 211, 224; *see Gantes*, 679 A.2d at 111-12. New Jersey's interest extends to protecting not just the citizens of New Jersey, but also the citizens of other states, from unreasonably dangerous products originating from New Jersey. *See McCarrell*, 153 A.3d at 224; *see Gantes*, 679 A.2d at 115. New Jersey courts have never taken the position that the health and safety of New Jersey's citizens are of greater concern or worth than the health and safety of citizens of another state. *See McCarrell*, 153 A.3d at 224.

Defendants cannot reasonably dispute that New Jersey has a substantial interest here. This is not a case where Plaintiffs sought to use New Jersey's court system to litigate a dispute that has only a slight connection to New Jersey. *See Gantes*, 679 A.2d at 113. This is not a case where the Defendants are only connected to New Jersey by way of incorporation. Defendants are New Jersey corporations and both Defendants' principal places of business are located in New Jersey. V1-Doc.10-2 at ¶ 4; V1-Doc.10-3 at ¶ 3. Defendant Ethicon designs, manufactures, markets, labels, and sells pelvic mesh devices, including the Prolift and the TVT-O devices surgically implanted in Mrs. Crowe. V1-Doc.10-2 at ¶ 7. Plaintiffs are

22

pursuing product liability claims related to 1) the defective design of Defendants' mesh devices and 2) Defendants' failure to warn, through both the Instructions for Use and patient brochures, Mrs. Crowe and her implanting physician of the potential risks associated with the mesh devices. V1-Doc.10-1 at ¶¶ 89-94, 102-109, 115-118; V1-Doc.58-3 at ¶¶ 8-9, 13.

In numerous actions involving Defendants' pelvic mesh products that were consolidated in the same MDL as Plaintiffs' case, Defendants have asserted that New Jersey law should govern plaintiffs' claims for punitive damages even when another state's substantive law applied. *See e.g.*, *Huskey v. Ethicon, Inc.*, 29 F.Supp.3d 736, 741 (S.D. W. Va. 2014); *In re Ethicon, Inc., Pelvic Repair System Products Liability Litigation*, 2014 WL 186869, *9 (S.D. W. Va. Jan. 15, 2014); *Bellew v. Ethicon, Inc.*, 2014 WL 6674433, *2 (S.D. W. Va. Nov. 24, 2014). Defendants' reason for asserting that New Jersey law should govern is <u>because the alleged conduct that gives rise to the plaintiffs' punitive damages claim occurred in New Jersey</u>. *See id.* (emphasis added).

Defendants' alleged conduct which gives rise to Crowes' claims occurred in New Jersey, and accordingly, this Court should determine whether Mrs. Crowe's claims are timely under New Jersey's statute of limitations as the New Jersey district court would have done had this case remained there.

23

## II.    UNDER NEW JERSEY'S STATUTE OF LIMITATIONS, THERE ARE GENUINE ISSUES OF MATERIAL FACT AS TO WHEN MRS. CROWE'S CLAIMS ACCRUED.

### A.    New Jersey's Discovery Rule

New Jersey has adopted a two-year statute of limitations for personal injury and product liability claims.  N.J. Stat. Ann. § 2A: 14-2.  "To avoid the harsh effect of a mechanical application of statute of limitations" the New Jersey Supreme Court has "adopted the discovery rule." *Szczuvelek v. Harborside Healthcare Woods Edge*, 865 A.2d 636, 640 (N.J. 2005).  "The rule 'provides that in an appropriate case a cause of action will be held not to accrue until the injured party discovers, or by an exercise of reasonable diligence and intelligence should have discovered ... a basis for an actionable claim.'"  *Id.* (quoting *Lopez v. Swyer*, 300 A.2d 563, 565 (N.J. 1973)).

In New Jersey, the discovery rule requires "knowledge not only of the injury but also that another is at fault."  *Martinez v. Cooper Hosp.-Univ. Med. Ctr.*, 747 A.2d 266, 270 (N.J. 2000); *see also Kendall v. Hoffman-La Roche, Inc.*, 36 A.3d 541, 552 (N.J. 2012).  Knowledge of fault for purposes of the discovery rule requires awareness of facts that would alert a reasonable person exercising ordinary diligence that a third party's conduct may have caused or contributed to the cause of the injury and that conduct itself might have been unreasonable or lacking in due care.  *See Savage v. Old Bridge-Sayreville Medical Group, P.A.*, 633 A.2d 514, 518 (N.J.

24

1993). "More concretely, in a medical device case, the plaintiff must be aware not only that she is suffering some injury, but that there is a reasonable basis to believe that the defendant manufacturer is at fault for it." *See Diaz v. C.R. Bard, Inc.*, 2023 WL 3452667, at *3 (D.N.J. May 15, 2023).

In determining whether a plaintiff has the requisite knowledge of fault for their claim to accrue, New Jersey courts often consider whether the plaintiff had "reasonable medical information" to connect their injury to fault. *Kendall*, 36 A.3d at 553 (quoting *Vispisiano v. Ashland Chem. Co.*, 527 A.2d 66, 76 (N.J. 1987). Part of this inquiry includes whether a plaintiff's physicians "dismissed or downplayed" the causal connection between a product and the plaintiff's injury. *See Yarchak v. Trek Bicycle Corp.*, 208 F.Supp.2d 470, 488 (D.N.J. 2002); *see also Vispisiano*, 527 A.2d at 77.

For example, in *Caravaggio v. D'Agostini*, the plaintiff's femur-stabilization rod snapped and her implanting surgeon blamed it on a structural defect in the rod. *See Caravaggio v. D'Agostini,* 765 A.2d 183-84, 189 (N.J. 2001). After testing of the rod revealed it was not defective, the plaintiff filed a medical malpractice claim against the surgeon. *Id.* at 185. The surgeon filed a motion for summary judgment which the trial court granted on the basis that the plaintiff's claims were time-barred. *Id.* at 185-86. On appeal, the New Jersey Supreme Court reversed the trial court's decision and found that the plaintiff's cause of action against the surgeon accrued

25

when analysis determined that the rod did not break, thereby exposing the surgeon's alleged malpractice as the cause of the plaintiff's post-surgery injuries.  *Id.* at 189-90.  Until the rod was removed and analysis revealed that it was not defective, there was no reason for the plaintiff to be suspicious of the surgeon.  *Id.* at 190.  The court stated that affirming the trial court's ruling "would have the untoward effect of pitting patients against their physicians, at a time at which they have no reason to doubt their physicians, in order not to risk losing their cause of action altogether."  *Id.* at 190-91.

Likewise, Mrs. Crowe did not have sufficient reason to suspect Defendants' mesh devices could be causing her pain until she saw Dr. Galloway in 2015.  Prior to 2015, she believed her pain was caused by a herniated disc because she was repeatedly told this by her doctors.  She even underwent back surgeries in 2010, 2012, and 2014 to repair her herniated disc at the recommendation of her doctors.  Mrs. Crowe should not be penalized for trusting her doctors and a jury should decide whether it was reasonable for Mrs. Crowe not to investigate alternative causes when her doctors gave her a plausible explanation for her injuries.  *See Kendall*, 36 A.3d at 556 (even though there may be "circumstances in which the 2003 warning might have been sufficient to alert a plaintiff of the connection between [the drug at issue] and her disease, it was certainly not sufficient, in these circumstances, to cause [the

26

plaintiff] to doubt her physicians or to disregard the advice and information that had been imparted to her by them for the prior six years.").

A determination of the timing of a plaintiff's knowledge of her claim is a "highly fact-specific inquiry." *See Yarchak*, 208 F.Supp.2d at 480-81. In New Jersey state court cases, the trial judge decides issues of fact over the date of accrual after an evidentiary hearing. *Lopez*, 300 A.2d at 567-68. In federal court, however, such issues are left to the jury. *See Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 571-73 (3d Cir. 1976), *cert. denied*, 429 U.S. 1038 (1977) (analyzing *Lopez* and holding that the Seventh Amendment requires that a jury, and not the court, resolve disputed issues of fact regarding the accrual of a cause of action under New Jersey's discovery rule). A district court may not "resolve factual disputes concerning application of the statute of limitations and the Discovery Rule during resolution of a motion for summary judgment." *See Hurly v. Pfizer Inc.*, 2012 WL 1161619, at *3 (D.N.J. Apr. 9, 2012).

**B.     Prior to 2015, Mrs. Crowe believed her continued pain was related to a herniated disc because she had been repeatedly told this by her treating doctors.**

After her 2007 surgery where Defendants' mesh devices were implanted, Mrs. Crowe began to experience the pelvic pain she still experiences to this day in 2010. V2-Doc.91-4; 4-Doc.92-8 at 23:7-13, 28:2-10. During visits to her treating doctors

27

between 2010 and 2014, she was repeatedly told that a herniated disc was the source of her pain.

- On August 5, 2010, Dr. Brown told Mrs. Crowe that Dr. McCool had done a good job implanting the mesh devices and told Mrs. Crowe he thought she had a herniated disc.  V4-Doc.92-8 at 75:9-76:6, 79:1-14, 156:24-157:9, 158:11-19, 159:1-7; V3-Doc.92-2 at 55:7-10;

- That same day, August 5, 2010, Mrs. Crowe underwent an MRI at the recommendation of Dr. Brown which showed she had a herniated disc.  V4-Doc. 92-8 at 79:10-14, 158:20-159:3; V3-Doc.92-2 at 55:18-57:21;

- On the recommendation of Dr. Brown, Mrs. Crowe visited Dr. James West (orthopedic surgeon) on August 23, 2010 and was informed that x-rays confirmed she had a herniated disc.  V4-Doc.92-9;

- Mrs. Crowe underwent back surgery in September 2010 at the recommendation of Dr. West.  V4-Doc.92-10; V4-Doc.92-11;

- On November 9, 2011, Dr. Brown told Mrs. Crowe her pelvic examination was normal and told her he thought her pain was caused by a herniated disc.  V3-Doc.92-2 at 65:19-66:9, 67:5-18;

- Mrs. Crowe underwent another back surgery in March 2012 at the recommendation of Dr. West.  V3-Doc.92-2 at 69:7-70:7;

- On May 24, 2012, Dr. Brown told Mrs. Crowe that her herniated disc was the likely source of her pain.  V3-Doc.92-2 at 67:19-70:18;

- On June 29, 2012, Dr. Brown examined Mrs. Crowe and noted "pain on sacrum around sacral nerves no vaginal pain on mesh etc. can't even feel mesh." V4-Doc.92-12;

- That same day, June 29, 2012, Dr. Brown told Mrs. Crowe her pain was likely related to her herniated disc or irritable bowel syndrome.  *Id.*;

- Mrs. Crowe underwent lumbar fusion surgery in August 2014 at the recommendation of Dr. Douglas Pahl at the Hughston Clinic.  V4-Doc.92-17;

- After the lumbar fusion surgery did not relieve her pain, Dr. Fredy Martinez (Hughston Clinic) informed Mrs. Crowe that, based on the results of an MRI she had recently undergone, she probably had an issue related to her pelvic and no longer related to her lumbar spine.  V4-Doc.92-20.

Before 2015, Mrs. Crowe believed her pain was the result of a herniated disc based on numerous consultations with her gynecologists and the orthopedic physicians that her gynecologists referred her to.  She diligently sought treatment for her pain and followed the recommendations of her doctors.  Mrs. Crowe received epidurals, went to physical therapy, and also underwent multiple serious back surgeries.  She trusted her doctors and did not have reason to suspect Defendants'

29

mesh devices could be the cause of her pain, much less that her pain could be the result of Defendants' wrongdoing (i.e., an actionable claim), until 2015.

### C.    Prior to 2015, none of Mrs. Crowe's treating doctors told her that her continued pain was related to Defendants' mesh devices or even informed her of the possibility.

Between 2010, when Mrs. Crowe's pain began, and 2014, she visited gynecologists, orthopedics, physical therapists, and a neurologist in an effort to relieve her pain.  During the dozens of visits and consultations between 2010 and 2014, Mrs. Crowe was never informed that her continued pain was related to Defendants' mesh devices.  V4-Doc.92-8 at 25:24-26:5, 164:21-165:2, 165:19-24; V2-Doc.91-6 at 7; V3-Doc.92-2 at 169:8-18, 170:10-20; V3-Doc.92-1 at 158:16-159:2.  In fact, Mrs. Crowe was never informed of the possibility that her pain was related to the mesh devices prior to 2015.  V4-Doc.92-8 at 25:24-26:5, 165:3-8, 166:1-6.

Put simply, Mrs. Crowe did not have information that caused her to suspect that Defendants' mesh devices could be related to her pain until 2015.  She certainly was never told that Defendants' mesh devices were defective in any way or even of the possibility of such.  V4-Doc.92-8 at 165:9-18, 166:7-18; V3-Doc.92-2 at 169:8-170:9, 170:10-20; V3-Doc.92-1 at 90:5-18, 157:23-158:15.  Mrs. Crowe should not be punished for trusting her doctors and following their recommendations.

30

**D.    Mrs. Crowe first attributed her injuries to Defendants' mesh devices in April 2015 when she saw Dr. Galloway.**

In March 2015, Dr. Fredy Martinez, an orthopedic at the Hughston Clinic, informed Mrs. Crowe that she probably had an issue that was related to her pelvis and no longer related to her lumbar spine.  V4-Doc.92-20.  She was then referred to Dr. Niall Galloway, a Urogynecologist at Emory University in Atlanta.

Mrs. Crowe first visited Dr. Galloway on April 16, 2015.  V4-Doc.92-21.  At this time, Dr. Galloway examined Mrs. Crowe and noted a right paravaginal detachment and that her bladder neck appeared to be fixed.  *Id.*  At this time, plans were made for Mrs. Crowe to return for a cystoscopy and a more extensive vaginal examination.  *Id.*

Mrs. Crowe returned to the Emory Clinic on April 21, 2015.  V4-Doc.92-22.  During a pelvic examination, Dr. Galloway noted significant point tenderness along several portions of Mrs. Crowe's mesh.  *Id.*  After the examination, Dr. Galloway met with both Mr. and Mrs. Crowe in his office to explain his findings and provided them with a copy of his notes.  V3-Doc. 92-7 at 61:23-63:12.  Mr. Crowe testified that Dr. Galloway's notes were "transcendental" and that he and Mrs. Crowe understood at that point "that there was a very strong connection between...the mesh...and other issues that [Mrs. Crowe] had been experiencing."  *Id.*

Mrs. Crowe first attributed her injuries to Defendants' mesh devices when she saw Dr. Galloway in April 2015.  V3-Doc. 92-7 at 61:23-63:12; V2-Doc.91-6 at 7.

31

Once she finally had reason to suspect that the mesh could be the cause of her injuries, Mrs. Crowe acted quickly. She and Mr. Crowe acted diligently by inquiring further once they received information suggesting her injuries were related to the mesh devices. In June 2015, Mr. Crowe took steps to retain counsel. V4-Doc.92-8 at 91:9-92:1; V3-Doc.92-7 at 20:23-21:19. Counsel filed a lawsuit on their behalf on August 20, 2015. V1-Doc.1.

This is not a situation where Mr. and Mrs. Crowe sat idle and failed to investigate once they received information suggesting her injuries were related to the mesh devices as opposed to a herniated disc. Any question as to whether it was reasonable for Mrs. Crowe to inquire further when she did or whether she should have inquired earlier is a question for a jury. A reasonable jury could conclude that Mrs. Crowe exercised reasonable diligence by attending regular follow-up appointments with her doctors and listening to their advice and that she reasonably believed her pain was caused by a herniated disc rather than the mesh devices.

Genuine issues of material fact remain as to when Mrs. Crowe discovered or should have discovered she may have a basis for an actionable claim and should be decided by a jury. *See Goodman*, 534 F.2d at 571-73. Therefore, the district court failed to view the facts in a light most favorable to the plaintiffs, but rather weighed the evidence erroneously made a finding as a matter of law regarding the accrual of

a cause of action under New Jersey's discovery rule.  This Court should reverse the district court's grant of summary judgment.

### E.    Other cases with similar law and fact patterns support a finding that there are genuine issues of material fact as to when Mrs. Crowe's claims accrued.

This Court has ruled on whether plaintiffs' claims were timely filed in at least four pelvic mesh cases.  In *Rogers v. Mentor Corp.*, this Court held that the district court erred in dismissing the claims of twelve separate plaintiffs as time-barred. *Rogers v. Mentor Corp.*, 682 Fed. Appx. 701 (11th Cir. 2017).  Applying Minnesota's[6] discovery rule to the plaintiffs' claims, this Court found that a reasonable jury could conclude that the plaintiffs did not know of a causal connection between their mesh devices and their injuries. *See id.* at 709.  Notably, none of the plaintiffs' doctors attributed their symptoms to a problem with their mesh devices. *Id.* at 710.  Both the defendant Mentor and the district court cited to portions of the doctors' depositions in which the doctors recalled suggesting removing the mesh devices, or hinted that removal might alleviate the plaintiffs' symptoms.  However, Mentor could not point to any evidence that the doctors indicated that the mesh

---

[6] Under Minnesota's discovery rule, two elements must be satisfied before a cause of action accrues in cases involving injuries caused by a defective product: "(1) a cognizable physical manifestation of the disease or injury, and (2) evidence of a causal connection between the injury or disease and the defendant's product, act, or omission." *See Klempka v. G.D. Searle & Co.*, 963 F.2d 168, 170 (8th Cir. 1992).

devices were not merely involved but were the actual *cause* of the symptoms. *Id.* (emphasis in original).

In two pelvic mesh cases where Florida's[7] discovery rule governed, this Court found that the question of whether the plaintiff's case was filed timely was for a jury to decide. *See Egnayem v. Boston Sci. Corp.*, 873 F.3d 1304, 1324 (11th Cir. 2017) (finding that "because even 'medical treatment competently performed' might cause new unpleasant symptoms, an injury must stand out from the norm to start the statutory clock"); *see In re Mentor Corp. Obtape Transobturator Sling Prod. Liab. Litig.*, 748 F. Appx. 212, 217 (11th Cir. 2018) (concluding that "Plaintiff's symptoms were not 'sufficiently distinct…from what might be expected after vaginal surgery to put her on notice of her cause of action' as a matter of law" where plaintiff's symptoms could have arisen from a non-defective mesh that was implanted through a properly performed surgery).

The fourth case, and what appears to be the sole pelvic mesh case where this Court has affirmed a district court's grant of summary judgment on statute of limitations, is *Curtis v. Mentor Worldwide, LLC.* 543 Fed. Appx. 901 (11th Cir. 2013) (Illinois'[8] discovery rule). In *Curtis*, this Court found that the plaintiff's

---

[7] Florida's discovery rule provides that claims do not accrue until "the date that the facts giving rise to the cause of action [are] discovered, or should [be] discovered with the exercise of due diligence." Fla. Stat. § 95.031(2).

[8] The discovery rule in Illinois delays the commencement of the statute of limitations until the plaintiff knows or reasonably should know that he has been injured and that

claims accrued in March 2006 because she testified in her deposition that she knew at that time that her infection and related problems had something to do with her mesh device. *Id.* at 903-904; *see Curtis v. Mentor Worldwide, LLC*, M.D. Ga. Case No. 4:11-cv-5074, Doc. 53, at p. 8 (M.D. Ga. Feb. 11, 2013) (order granting summary judgment) (copy included in Appendix Volume 1 at Tab D). At that time, the plaintiff was obligated to begin her inquiry as to who manufactured her mesh device and whether her complications were due to a problem with the surgery itself or defective mesh. *Curtis*, 543 Fed. Appx. at 904.

Unlike the plaintiff in *Curtis*, Mrs. Crowe did not have the insight or suspicion (i.e., inquiry notice) to investigate whether Defendants' mesh devices could be to blame while she reasonably believed her continued pain was the result of a herniated disc. *See Stark v. Johnson & Johnson*, 10 F.4th 823, 825 (7th Cir. 2021) ("[w]e therefore think that the Illinois courts would not bar [plaintiff] from bringing her claims because she did not have the insight or suspicion to investigate the manufacturer of the [mesh device] while she reasonably believed that her continuing problems were the results of natural causes, including, most notably, her own EDS"). Mrs. Crowe did not suspect or have reason to suspect that her pain was related to her mesh devices until 2015 because her doctors repeatedly told her that her pain was

---

his injury was wrongfully caused. *See Hermitage Corp. v. Contractors Adjustment Co.*, 651 N.E.2d 1132, 1137 (Ill. 1995).

caused by a herniated disc and never gave her reason to suspect the mesh devices could be the issue.

Outside of the Eleventh Circuit, other pelvic mesh cases with similar law and fact patterns support a finding that there are genuine issues of material fact as to when Mrs. Crowe's claims accrued.  In *Stark v. Johnson & Johnson*, the Seventh Circuit addressed whether the plaintiff's claims were timely filed under Illinois law. *See Stark*, 10 F.4th at 825.  Like Mrs. Crowe, Ms. Stark was implanted with Defendants' TVT-O mesh device in 2007.  *See id.* at 825.  When she experienced pain and continued incontinence after her implant surgery, her surgeon explained to her that her Ehlers-Danlos syndrome ("EDS") might be a contributing cause.  *Id.* at 826.  EDS refers to a group of inherited disorders that affect the body's connective tissues.  *Id.*

Ms. Stark subsequently had follow-up surgeries in 2008 and 2015 during which doctors removed portions of the TVT-O mesh device.  After defendants filed a motion for summary judgment, the district court determined that, at the latest, Ms. Stark should have known in 2015 that her injuries were directly related to the eroded mesh.  *Stark*, 10 F.4th at 829.  This is when her physician tried but failed to remove remnants of eroded mesh.  *Id.*  The district court determined that Ms. Stark's EDS diagnosis did not raise any genuine issue of material fact, and in the court's view, she "still had a duty to investigate whether she had a cause of action and whether her

complications were a result of the surgery, a defective product, or something else entirely." *Id.*

On appeal, the Seventh Circuit reversed the district court's decision and found there was a genuine issue of material fact concerning when Ms. Stark reasonably should have known that her mesh-related injuries might have been wrongfully caused. *Stark*, 10 F.4th at 829-30. The court found that a jury might reasonably find that Ms. Stark believed that her mesh-related complications were caused by EDS and had no reason to look further for an explanation. *Id.* at 830. None of the three doctors who treated Ms. Stark ever suggested to her that the mesh device could be the source of her complications. *Id.* at 837. And all three doctors, whether in conversations with Ms. Stark or in testimony, actually said that her EDS could be to blame. *Id.* A jury could find that Ms. Stark was therefore objectively reasonable in continuing to believe, until her conversation with her friend in 2018, that her EDS was to blame and in not looking for any further explanation. *Id.* "Ms. Stark – like all other patients – should not be penalized for trusting her physicians' advice and not suspecting too quickly that her poor medical outcome was caused by a negligent actor." *Id.* at 836.

Likewise, none of Mrs. Crowe's doctors ever suggested to her that her mesh devices could be the source of her pain until 2015 and actually told her that a herniated disc was to blame. A jury could find that Mrs. Crowe was objectively

reasonable in continuing to believe, until her appointment with Dr. Galloway in 2015, that her herniated disc was to blame and in not looking for any further explanation. There are genuine issues of material fact as to the date that Mrs. Crowe's claims accrued. Therefore, this Court should reverse the district court's grant of summary judgment.

## III.    THE DISTRICT COURT IGNORED GENUINE ISSUES OF MATERIAL FACT AND FAILED TO ANALYZE THE FACTS IN A LIGHT MOST FAVORABLE TO MRS. CROWE.

The district court found that by 2012, at the latest, Mrs. Crowe should have discovered she may have a basis for an actionable claim. However, the court failed to analyze the facts in a light most favorable to Mrs. Crowe, as the law requires. *See e.g., Blackburn v. Shire US Inc.*, 18 F.4th 1310, 1320 (11th Cir. 2021) ("The district court reasoned that [plaintiff's] 'conduct' contradicted his testimony, but we fail to see how it reached that conclusion if it viewed the facts in [plaintiff's] favor, as it was required to do.").

The district court relied in part on the hysterectomy Mrs. Crowe had in 2012 during which Dr. Brown also released, or cut, one of the mesh arms to relieve tension. The court also relied on disputed evidence contained in medical records from visits to Dr. Brown in 2011 and 2012 that note Mrs. Crowe was asking if the mesh could be what is causing her pain and inquired about the specific manufacturer. The court's analysis, however, was incomplete and flawed. The court improperly

weighed the evidence relating to Mrs. Crowe's care and treatment between 2010 and 2012 and either ignored or dismissed testimony from Mrs. Crowe and her doctors.

The district court also found that through minimal diligence Mrs. Crowe would have discovered she may have a basis for an actionable claim via the 2008 FDA Public Health Notification and because "by 2012, thousands of plaintiffs were filing lawsuits against pelvic mesh manufacturers (including the Defendants)." V5-Doc.99 at 17-18. In making this determination, the court improperly concluded that Mrs. Crowe had reason in 2011 or 2012 to inquire further as to whether she may have had a basis for an actionable claim related to Defendants' mesh devices.

The district court either ignored or dismissed evidence showing Mrs. Crowe formed a reasonable belief about the cause of her pain – her herniated disc – beginning in 2010 and through 2015, based on diagnoses of her doctors. She had no information that would have changed that belief until 2015 so there was no reason for her to investigate Defendants' mesh devices as a potential cause until that time. Whether it was reasonable for Mrs. Crowe not to investigate alternative causes when her doctors gave her a plausible explanation for her pain is a jury question and was not for the district court to decide. For this and other reasons laid out below, the district court erred in granting summary judgment.

**A.**     **The district court either ignored or dismissed evidence showing Mrs. Crowe formed a reasonable belief that her pain was caused by a herniated disc from 2010 through 2015 based on the opinions and diagnoses of her doctors.**

In concluding that "by an exercise of reasonable diligence and intelligence" Mrs. Crowe should have discovered she may have a basis for an actionable claim in 2011 or at the latest 2012 (V5-Doc.99 at 18), the district court never addressed the impact of Mrs. Crowe's belief that her herniated disc was the cause of her pain. Mrs. Crowe did not have reason in 2011 or 2012 to inquire further as to whether she may have had a basis for an actionable claim related to Defendants' mesh devices. She did not have reason to inquire further because she believed that her continued pain was related to a herniated disc.

The district court either ignored or dismissed evidence that, until 2015, none of Mrs. Crowe's doctors ever informed her that her pain was caused by the mesh devices or that there were any problems with the mesh devices. Both doctors who were involved in the implant of Mrs. Crowe's mesh devices testified as such in their depositions. V3-Doc.92-2 at 169:14-170:20; V3-Doc.92-1 at 157:23-159:2. The court also ignored or dismissed evidence that, starting in 2010 and up through 2015, Mrs. Crowe was repeatedly told by her doctors that her pain was due to a herniated disc.

Between 2010 and 2015, Mrs. Crowe received epidurals, went to physical therapy, and underwent three serious back surgeries at the recommendations of her

40

doctors. It was error for the district court to ignore or dismiss this evidence and conclude as a matter of law that Mrs. Crowe objectively and reasonably should have discovered a basis for an actionable claim related to Defendants' mesh devices when the record contains substantial evidence showing her doctors were telling her otherwise. To do so constitutes an improper weighing of conflicting evidence, which is the role of the jury but not the role of the district court at the summary judgment stage. Therefore, the district court's order granting summary judgment was in error.

**B.** **The district court either ignored or dismissed testimony from Mrs. Crowe and Dr. Brown relating to whether she asked him if the mesh devices were causing her pain.**

In finding that Mrs. Crowe's claims were time-barred as a matter of law, the district court stated that, "even in 2011 and 2012, Mrs. Crowe was asking her doctor if the mesh could be what is causing her pain and inquired about the specific manufacturer." V5-Doc.99 at 18. The court specifically cited language from Mrs. Crowe's medical records from visits to Dr. Brown on November 9, 2011 and May 24, 2012. *Id.* at 17-18. However, it appears that the court either ignored or dismissed both Mrs. Crowe's and Dr. Brown's sworn deposition testimony related to these visits.

Mrs. Crowe testified that she did not request the name of the manufacturer of the mesh and that she never asked Dr. Brown if her TVT-O was causing her vaginal

pain, groin pain, and stomach pain.   V4-Doc.92-8 at 81:3-83:19, 85:2-11, 163:5-164:4.  Mrs. Crowe specifically testified as follows:

> Q.     Do you recall ever asking Dr. Brown if the mesh had anything to do with your pain directly?
> **A.     Not that I recall.**

> Q.     Do you disagree with the notes from this record from this visit on May 24th, 2012, that you asked Dr. Brown these questions?
> **A.     I would disagree with that. I don't remember asking him those questions.**

V4-Doc.92-8 at 163:17-19, 163:24-164:4.  In addition to Mrs. Crowe's testimony disputing the notes in the records from these visits, Dr. Brown was asked about these visits at his deposition and testified as follows:

November 9, 2011 Visit

> Q.     Based on the notes in your plan and based on your treatment of her and her medical history as well as the examination, did you feel at this time that -- that her pain was related to degenerative disc disease?
> **A.     I did.**

> Q.     Was there anything -- did you note anything following your pelvic examination that would have led you to believe at that time that her pain was related to the TVT-O?
> **A.     No.**

> Q.     And following your pelvic examination, did you note anything that would lead you to believe that her pain was related to the Prolift?
> **A.     No.**

> Q.     And are these things you would have discussed with Mrs. Crowe at that time on November 9, 2011?

**A.     Yes.**

<u>May 24, 2012 Visit</u>

Q.     Okay. And did you note anything on examination that caused you
       to believe that Mrs. Crowe's pain could be related to the TVT-O?

**A.     Not at that time, no.**

Q.     And at that time, did you note anything on examination that would
       have caused you to believe that Mrs. Crowe's pain could be related
       to the Prolift?

**A.     No.**

V3-Doc.92-2 at 66:4-9, 67:5-18, 70:8-17.   Based on the conclusions concerning

these office visits and examinations, it is clear that the court discounted or ignored

not only Mrs. Crowe's testimony but also Dr. Brown's testimony, which

demonstrated that Dr. Brown did not believe Mrs. Crowe's symptoms were related

to the mesh devices.   The deposition testimony of Mrs. Crowe and Dr. Brown

demonstrates genuine issues of material fact as to whether Mrs. Crowe or a

reasonable person in her shoes should have been on notice of a basis for an actionable

claim related to Defendants' mesh devices.   Those issues should be decided by a jury

and this Court should reverse the district court's grant of summary judgment.

**C.     The district court either ignored or dismissed evidence related to
         Mrs. Crowe's 2012 surgery when it found as a matter of law that
         the surgery put her on notice of a basis for an actionable claim.**

In finding that Mrs. Crowe should have discovered that she may have a basis

for an actionable claim by 2012 at the latest when she had surgery to release the

mesh, the district court ignored genuine issues of material fact related to the surgery

43

and failed to view the facts in the light most favorable to Mrs. Crowe. Specifically, the court ignored or dismissed both Mrs. Crowe's and the surgeon's (Dr. Brown) sworn deposition testimony related to the surgery.

In 2012, Mrs. Crowe continued to experience pelvic and groin pain and for a short time during June 2012 experienced vaginal bleeding. V4-Doc.92-12. Dr. Brown noted in his records that Mrs. Crowe's bleeding ended when she stopped taking the hormone therapy medication she had been prescribed, but recommended that she undergo a hysterosonogram[9] so he could try and determine the cause of the bleeding. *Id.*; V3-Doc.91-20. After the hysterosonogram, Dr. Brown informed Mrs. Crowe that she had pelvic inflammatory disease and pelvic congestion and recommended she undergo a hysterectomy. V4-Doc.92-8 at 93:13-94:8; V3-Doc.92-2 at 73:8-13. Dr. Brown testified that he thought a hysterectomy would treat Mrs. Crowe's pelvic congestion which could help relieve her pain. V3-Doc.92-2 at 73:8-13. Dr. Brown described pelvic congestion as being "like a hemorrhoid [of]…the varicose veins on your leg" which can cause pain of the ovarian vein. *Id.* at 73:1-7. When Dr. Brown performed the hysterectomy in October 2012, he also cut one of the arms of the Prolift mesh that had become tighter over time to relieve tension. V4-Doc.92-14; V3-Doc.92-2 at 76:6-10.

---

[9] A hysterosonogram is an ultrasound exam that provides images of the uterus to diagnose the cause of vaginal bleeding.

Plaintiffs certainly recognize there may be instances where a patient like Mrs. Crowe who undergoes surgery following implantation of surgical mesh is on inquiry notice, or on notice that would cause the patient or a reasonable person in their shoes to investigate whether they have a basis for an actionable claim. However, considering the totality of circumstances surrounding Mrs. Crowe's July 2012 surgery, Plaintiffs have presented substantial evidence showing that Mrs. Crowe did not have reason to inquire further at that time. Dr. Brown never informed Mrs. Crowe that the symptoms or injuries she was experiencing were caused by the mesh devices she had implanted or even informed her of the possibility of such. V4-Doc.92-8 at 164:21-165:8; V3-Doc.92-2 at 170:10-20. In fact, Dr. Brown noted in the July 2012 operative note that an MRI Mrs. Crowe had recently undergone "showed encasement of the S1 nerve root on the left, may have something to do with her pain." V4-Doc.92-14. At his deposition, Dr. Brown provided the following testimony related to Mrs. Crowe's July 2012 surgery:

> "[F]irst of all, I didn't think [her pain] was related to the mesh arm, and releasing it didn't make [her pain] better. And I thought that it was related to her disc issue and probably some irritable bowel and constipation related to pain medicine and all those things. I'm not sure. But I didn't -- but it wasn't -- that wasn't high on my differential –"

V3-Doc.92-2 at 175:13-21.

This evidence establishes that, despite cutting one of the arms of the Prolift mesh device, Dr. Brown did not believe the mesh was the cause of Mrs. Crowe's

45

pain and never suggested the mesh was the cause to put Mrs. Crowe on notice. Despite this testimony, the district court concluded that a patient, who is not trained in medicine, should reach a different conclusion than her board-certified physician. This is an improper weighing of the evidence and finding of fact. Defendants would be free to argue to a jury that this procedure put Mrs. Crowe on notice but a jury could find that it was reasonable for Mrs. Crowe not to inquire further merely because her doctor transected one of the mesh arms that had become tighter on one side. According to Dr. Brown, when mesh becomes tight in a certain area, that does not necessarily indicate there's a problem with the actual mesh itself and does not indicate that the mesh became tight because of anything directly related to the mesh itself. V3-Doc.92-2 at 54:6-55:2. Dr. Brown also testified that there can be a number of factors that influence whether or not mesh becomes tighter and that some contracture of the mesh over time is expected. *Id.* at 54:6-55:2.

A surgery where some mesh is removed or cut to release tension, when there is an alternative explanation as to why the surgery is necessary, does not indicate a basis for an actionable claim against the manufacturer as a matter of law. *See. e.g., see In re Mentor Corp.*, 748 F. App'x 212 at 217 ("Taking all inferences in favor of plaintiff, whether her claim had accrued by February 2006 - when her [mesh] implant was removed - is therefore a question of fact for the jury."); *Mason v. Ethicon, Inc.*, 2020 WL 6270847, *2 (M.D. Fla. Sept. 9, 2020) (finding that need for surgical

removal did not necessarily put the plaintiff on notice of potential claim); *Sanchez v. Boston Scientific Corp.*, 2014 WL 202787, *7-8 (S.D.W.Va. Jan. 17, 2014) (finding genuine issue of material fact as to when plaintiff suspected that wrongdoing caused her injuries despite plaintiff undergoing four revision surgeries, court noted plaintiff's doctor never told her that her symptoms were caused by a defect in the mesh and held "[o]ne could reasonably conclude that [plaintiff's] body simply 'didn't like' the mesh."); *Foreman v. Boston Scientific Corp.*, 2015 WL 1276714, *4 (S.D.W.Va. March 19, 2015) ("whether a reasonable person would have had reason to suspect her injuries were due to wrongdoing merely because she opted to have her implant removed is a question best left to the jury."); *Straub v. Boston Scientific Corp.*, 2015 WL 1198545, *4 (S.D.W.Va. March 16, 2015) (in case where plaintiff underwent three mesh revision surgeries, court found that defendant failed to present evidence that plaintiff ever linked her injuries to a possible wrong committed by the defendant given that plaintiff's physician stated with respect to second surgery that releasing the mesh "[was] not uncommon" and "[was] not that big a deal" and with respect to third surgery testified that the "mesh had slipped.")).

Considering Mrs. Crowe's testimony and the testimony of Dr. Brown and Dr. McCool, and drawing all inferences in Mrs. Crowe's favor, a jury could find that it was reasonable for her not to investigate whether she may have a potential claim in 2011 or 2012 while she reasonably believed that her pain was the result of a herniated

disc and her doctors gave her no reason to suspect her injuries were related to the mesh devices. *See Stark*, 10 F.4th at 837 ("A jury could find that [plaintiff] was therefore objectively reasonable in continuing to believe, until her conversation with her friend [who was an attorney], that her [Ehlers-Danlos syndrome] was to blame, and in not looking for any further explanation."). Mrs. Crowe should not be required to reject what her doctors told her and start her own independent investigation. She is not a doctor and should not be held to a standard of information or charged with a level of technical knowledge that eluded even her doctors. *See Stark*, 10 F.4th at 837. A jury should decide whether it was reasonable for Mrs. Crowe not to investigate alternative causes when her doctors made clear that her pain was caused by a herniated disc and gave her no reason to suspect her pain was related to the mesh devices. Therefore, the district court's order granting summary judgment was in error.

**D.  The district court erred in concluding that the FDA notifications and the fact that others were filing lawsuits were sufficient as a matter of law to put Mrs. Crowe on inquiry notice.**

In finding that Mrs. Crowe's claims are time-barred as a matter of law, it appears the district court also relied in part on the 2008 and 2011 FDA Public Health Notifications. V5-Doc.99 at 17-18. The court also stated using minimal diligence Mrs. Crowe "would have …discovered that by 2012, thousands of plaintiffs were

filing lawsuits against pelvic mesh manufacturers (including the Defendants)." *Id.* at 18.

As discussed above, Plaintiffs have presented ample evidence to show that Mrs. Crowe had no basis to suspect Defendants' mesh devices caused her injuries until she saw Dr. Galloway in 2015. Even if Mrs. Crowe did have sufficient reason to investigate further in 2011 and 2012, the FDA notifications and the fact that thousands of plaintiffs were filing lawsuits would not necessarily put her on notice as a matter of law that she may have an actionable claim. The district court's conclusion that Mrs. Crowe should have been aware that Defendants' mesh devices were causing her medical problems elevates an untrained individual over trained and experienced medical professionals, who, despite the 2008 and 2011 FDA notifications, believed that the mesh devices were not the cause of Mrs. Crowe's pain. Such a conclusion is not for the district court to make at the summary judgment stage.

On October 20, 2008, the FDA issued a Public Health Notification informing healthcare practitioners of complications associated with transvaginal placement of surgical mesh. The notice stated that, although rare, these complications could have serious consequences. V4-Doc.95-3. On July 13, 2011, the FDA issued an update to the 2008 notification and identified surgical mesh for transvaginal repair of pelvic organ prolapse as an area of continuing serious concern. In this update, the FDA

49

reported that serious complications associated with surgical mesh are not rare and that it was not clear that pelvic organ prolapse repair with mesh is more effective than traditional non-mesh repair.  V4-Doc.95-4.

Even if Mrs. Crowe would have disregarded the opinions of her doctors and conducted further inquiry in 2011 or 2012, these notifications would not put her on notice as a matter of law that she may have an actionable claim.  Prior to undergoing surgery in 2007 where Defendants' mesh devices were implanted, Mrs. Crowe relied on a brochure that was written and distributed by Defendants that stated potential risks were rare.  V4-Doc.92-8 at 104:17-105:1, 153:3-154:20.  Mrs. Crowe was aware prior to undergoing surgery to have the mesh devices implanted that there were risks associated with the procedure, as there are with any surgery.  Because she understood this, the FDA notifications would not necessarily have put her on notice that she may have had an actionable claim but only informed her that she possibly experienced complications that could be expected following any transvaginal surgery done *with or without* mesh.  *See Eghnayem*, 873 F.3d at 1324 ("Ultimately, a jury could have reasonably concluded that [plaintiff's] injury was not so 'distinct…from conditions naturally to be expected from [her post-surgical] condition,' and so the timeliness of [plaintiff's] action was properly a question of fact for the jury.").  Based on the circumstances in this case, a jury should decide if (a) Mrs. Crowe had reason to investigate potential alternative causes when her

doctors gave her no reason to suspect the mesh and in fact informed her they believed her injuries were related to a herniated disc; and (b) whether the FDA notifications or the fact that others were filing pelvic mesh lawsuits would have informed Mrs. Crowe or a reasonable person in her shoes that they may have an actionable claim.

Both the 2008 and 2011 FDA notifications encouraged physicians to report any adverse events from patients they suspected were related to the use of surgical mesh. V4-Doc.95-3; V4-Doc.95-4. However, Dr. Brown never reported any potential adverse events related to Mrs. Crowe to the FDA. Dr. Brown was specifically asked about this at his deposition:

> Q.    And, Dr. Brown, at any time related to your care and treatment of Mrs. Crowe did you ever report any type of adverse event related to the use of surgical mesh to the FDA?
> **A.    I did not.**
>
> Q.    And is that because you do not believe she experienced any adverse event as a result of surgical mesh?
> **A.    Because I can't tie it to the mesh.**

V3-Doc.92-2 at 169:8-18 (objection omitted). If her treating doctors did not inform her that her injuries were related to the mesh devices and, in fact, told her that her injuries were related to a herniated disc, it seems unfair to hold as a matter of law that Mrs. Crowe should have investigated whether she had a basis for an actionable claim related to Defendants' mesh devices in 2011 or 2012. If her gynecologist did not consider any of her injuries to be potential adverse events that should be reported to the FDA, it also seems unfair to hold as a matter of law that the FDA notifications

51

would have informed her or a reasonable person in her shoes they had an actionable claim. Therefore, this Court should reverse the district court's grant of summary judgment.

**E.   The district court's reliance on *Tily v. Ethicon, Inc.* was misguided.**

The district court relied on the decision in *Tily v. Ethicon, Inc.*, 2020 WL 5369724 (E.D. Pa. Sept. 8, 2020) to support its ruling. The court cited to *Tily* in support of its finding that through minimal diligence Mrs. Crowe should have discovered a basis for an actionable claim in 2011 or 2012 because of the 2008 FDA Public Health Notification and because "by 2012, thousands of plaintiffs were filing lawsuits against pelvic mesh manufacturers (including the Defendants)." V5-Doc.99 at 17-18. However, the law and facts in *Tily* are distinguishable from those in this case.

Pennsylvania's discovery rule governed in *Tily*, which places a greater burden on plaintiffs than New Jersey's discovery rule. In Pennsylvania, the limitations period begins to run once the plaintiff knows or reasonably should know of an injury and its cause. *Rowland v. Novartis Pharms. Corp.*, 34 F. Supp. 3d 556, 566 (E.D. Pa. 2014). "Pennsylvania's formulation of the discovery rule reflects a narrow approach 'to determining accrual for limitations purposes' and places a greater burden upon Pennsylvania plaintiffs vis-á-vis the discovery rule than most other jurisdictions." *Gleason v. Borough of Moosic*, 15 A.3d 479, 484 (Pa. 2011) (quoting

52

*Wilson v. El-Daief*, 964 A.2d 354, 364 (Pa. 2009)).    The rule only protects "blameless ignorance" on the part of the plaintiff.    *Cochran v. GAF Corp.*, 666 A.2d 245, 249 (Pa. 1995).

The facts in *Tily* are also vastly different than those in this case.    Unlike Mrs. Crowe, the plaintiff in *Tily* "testified that in January 2012, she had experienced pain and recurrent urinary incontinence that she believed might be related to her [mesh] device."    *See* Tily, 2020 WL 5369724, at *2.    Therefore, the court found that the plaintiff's claims accrued at that time.    *Id.* at *5.    The court also pointed out that the plaintiff failed to undertake even minimal diligence after January 2012 because she never discussed her pain with a doctor.    *See id.*

Unlike the plaintiff in *Tily*, Mrs. Crowe was diligent up until the time she discovered a potential causal connection between her pain and the mesh devices in 2015.    She regularly visited her doctors and agreed to undergo multiple back surgeries and physical therapy in an effort to cure what she believed was the source of her pain – a herniated disc.    Mrs. Crowe was not aware and did not suspect that Defendants' mesh devices could be the cause of her pain until 2015 when she saw Dr. Galloway.

## CONCLUSION

The district court was presented with genuine issues of material fact about when Mrs. Crowe knew or should have known that Defendants' mesh devices were

the cause of her injuries. The district court, focusing only on a few select facts and largely ignoring other key facts, improperly determined that Mrs. Crowe knew or should have known that she may have a basis for an actionable claim in 2011 or 2012. The court improperly invaded the province of the jury and imposed its own interpretation of the facts instead of viewing the facts in a light most favorable to the Plaintiffs. Genuine issues of material fact remain as to when Mrs. Crowe's claims accrued and, thus, whether the statute of limitations bars her claims. These issues should be decided by a jury.

Accordingly, this Court should reverse the district court's grant of summary judgment and remand this case to the district court for trial.

DATED: June 12, 2023                     Respectfully submitted,

                                        */s/Frederick B. Darley, III*
                                        Frederick B. Darley, III
                                        P. Leigh O'Dell
                                        **BEASLEY, ALLEN, CROW, METHVIN,**
                                        **PORTIS & MILES, P.C.**
                                        P.O. Box 4160
                                        234 Commerce Street
                                        Montgomery, AL 36103 (36104)
                                        Phone: (334) 269-2343
                                        Fax: (334) 954-7555
                                        Beau.Darley@BeasleyAllen.com
                                        Leigh.Odell@BeasleyAllen.com

                                        *Attorneys for Plaintiffs/Appellants Rowena*
                                        *Crowe and Robert Crowe*

## **CERTIFICATE OF COMPLIANCE**

I HEREBY CERTIFY that this filing complies with the type-volume limitation of Rule 27(d)(2)(A), Federal Rules of Appellate Procedure, in that it contains 12,984 words, excluding the parts of the document exempted by Fed. R. App. P. 32(f), according to the word-processing system used to prepare this filing. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman.

*/s/Frederick B. Darley, III*
Frederick B. Darley, III

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that, on June 12, 2023, a copy of the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, and served on counsel of record either via transmission of Notice of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically generated notices of filing.

*/s/Frederick B. Darley, III*
Frederick B. Darley, III

55